IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

KERMIT O. ROGERS                                                          PLAINTIFF

V.                                                          CAUSE NO.: 1:13CV243-SA-DAS

CITY OF TUPELO, MISS., ET AL.                                              DEFENDANTS

MEMORANDUM OPINION

Defendants have filed motions for summary judgment seeking dismissal of Plaintiff's

federal and state law claims against the separate entities. After reviewing the motions,

responses, rules and authorities, the Court finds as follows:

*Factual and Procedural Background*

Kermit Rogers was federally indicted based on evidence found during a search and

seizure on June 17, 2009. The search was undertaken pursuant to a search warrant for the

property located at 320 CR 401 in Shannon, Mississippi. Samuel Warren, a deputy with the Lee

County Sheriff's Department and assigned to the North Mississippi Narcotics Unit (NMNU),[1]

provided the underlying facts and circumstances and probable cause statement for the search

warrant. According to his sworn affidavit, NMNU intelligence showed Kermit Rogers selling

crack cocaine to a confidential informant at a residence located at 320 CR 401. The warrant was

issued for the residence "together with all approaches and appurtenances thereto and all vehicles

and out buildings on the property, along with the person and personal belongings of all suspects

on the property." The parties do not contest the validity of the initial search warrant.

---

[1] NMNU is a narcotics task force comprised of officers from multiple agencies, including the City of Tupelo Police
Department and the Lee County Sheriff's Department. Samuel Warren, a Lee County Sheriff's Deputy, and Paul
Howell, a Lieutenant at the Tupelo Police Department, were part of this task force and are sued in their individual
capacities.

The search was executed on June 17, 2009, with officers finding narcotics and firearms within the residence. While supervising the search, Warren was alerted by officers that an out building behind the house was surrounded by three vehicles, at least one of which was registered to Kermit Rogers. Warren and Paul Howell, Warren's NMNU commanding officer, walked down the path to the out building and noticed a sign designating the building as "320A." Both Howell and Warren testified in their depositions that at that time, they believed the building at 320A was part of the same property as 320. Howell encouraged Warren to call the warrant-issuing judge "just to be safe" and "to make sure that we're good." Warren informed the judge that there were vehicles that belonged to Kermit Rogers down a dirt path behind the house near a "shop building" designated as 320A. In his deposition, Warren contends that Judge Carr indicated that the officers were "fine" to search the 320A building and vehicles surrounding it.

As summarized in other opinions this Court has released, officers uncovered a significant amount of crack cocaine and federal authorities were notified. Kermit Rogers was then prosecuted by the United States Attorney's Office for the large amount of narcotics as well as the firearms found in the residence at 320 CR 401. The district court suppressed the crack cocaine found in the vehicle on the finding that the search warrant did not cover the 320A building or the vehicles surrounding it. The federal indictment was thereafter dismissed.

Rogers has instituted this action against the City of Tupelo, Lee County, Samuel Warren, in his individual capacity, and Paul Howell, in his individual capacity, pursuant to Section 1983, as well as state law. All defendants have moved for summary judgment.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the

moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u> at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002); <u>SEC v. Recile</u>, 10 F.3d 1093, 1097 (5th Cir. 1997); <u>Little</u>, 37 F.3d at 1075.

*Discussion and Analysis*

Defendants Paul Howell and Samuel Warren, both sued in their individual capacities, have asserted that they are entitled to qualified immunity. Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" <u>Good v. Curtis</u>, 601 F.3d 393, 400 (5th Cir. 2010) (quoting <u>Anderson v.</u>

Creighton, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). A law enforcement officer is entitled to the cloak of qualified immunity "unless it is shown that, at the time of the incident, he violated a clearly established constitutional right." Mangieri v. Clifton, 29 F.3d 1012 (5th Cir. 1994). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" Good, 601 F.3d at 400 (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)). It is "an entitlement not to stand trial or face the other burdens of litigation." Austin v. Johnson, 328 F.3d 204, 207 (5th Cir. 2003) (citing Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. Hampton v. Oktibbeha Cnty. Sheriff Dep't, 480 F.3d 358, 363 (5th Cir. 2007). In the summary judgment posture the court "'looks to the evidence before it (in the light most favorable to the plaintiff).'" McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (quoting Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). Second, if a violation has been alleged, the court must determine "'whether [the officers'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" Id. (quoting Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007)).

"The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated

the United States Constitution or the federal statute as alleged by the plaintiff." Thompson v. Upshur Cnty., Tex., 245 F.3d 447, 457 (5th Cir. 2001). Thus, "[a]n official is eligible for qualified immunity even if the official violated another's constitutional rights." Id. It is vital to note that the right that the "official is alleged to have violated must have been clearly established in a more particularized, and hence more relevant sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640, 107 S. Ct. 3034. The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." Saucier, 533 U.S. at 202.

Finally, it is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first. Collier, 569 F.3d at 217 (quoting Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). In particular, the Supreme Court in Pearson observed that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." 555 U.S. at 237, 129 S. Ct. 808.

A. Section 1983 – Individual Officers

    a. Search and Seizure

Rogers contends that the officers violated his constitutional rights by searching the property at 320A CR 401. An investigation undertaken after the search, and in contemplation of this civil law suit, revealed that the 320A CR 401 property was a separate parcel owned by another family member of Rogers, distinct from the 320 CR 401 parcel. The vehicle at issue in this Section 1983 action was located on this separate private property. It is not contested that the

officers did not have a search warrant for the property at 320A CR 401; however, a warrantless search was executed on that property as well as on Rogers' vehicle.

A warrantless search is presumptively unreasonable unless it falls within an exception to the Fourth Amendment's warrant requirement. United States v. Guzman, 739 F.3d 241, 245 (5th Cir. 2014) (citing United States v. Karo, 468 U.S. 705, 717, 104 S. Ct. 3296, 82 L. Ed. 2d 530 (1984)).  When officers have probable cause to believe a suspect's vehicle contains contraband or criminal evidence, they may search it without a warrant, pursuant to the automobile exception to the warrant requirement. Mack v. City of Abilene, 461 F.3d 547, 552-53 (5th Cir. 2006).  The automobile exception to the Fourth Amendment recognizes that a vehicle's mobility is a special consideration which grants exception to the requirement for a warrant to search. New York v. Class, 475 U.S. 106, 112-13, 106 S. Ct. 960, 89 L. Ed. 2d 81 (1986) (explaining that the automobile exception stems from the inherent mobility of, and reduced expectation of privacy in, a vehicle); see also Guzman, 739 F.3d at 246. Such warrantless search, however, requires a vocalization that officers had probable cause or reasonable suspicion to believe the automobile contained evidence of a crime or that the automobile itself was contraband. United States v. Ortiz, 781 F.3d 221, 229 (5th Cir. 2015).

Officers acknowledge that they were monitoring the vehicle as it was parked beside 320A CR 401 while Rogers was either several miles down the road at his mother's house or being held in the residence by other officers at 320 CR 401.  Thus, the search of the red truck is not excepted from the warrant requirement as there was no exigent circumstance regarding the vehicle's mobility which would excuse a warrantless search of the automobile. See United States v. Sinisterra, 77 F.3d 101, 105 (5th Cir. 1996) (where a vehicle is "parked in the driveways of the residences of the defendants . . . exigent circumstances were required to justify a warrantless

search").  Accordingly, Rogers' red truck was searched without a warrant and without the "special considerations" recognized in applying the automobile exception to the Fourth Amendment.  Plaintiff has sufficiently alleged facts constituting a constitutional violation.

A right is clearly established only if "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Trent v. Wade, 776 F.3d 368, 383 (5th Cir. 2015) (citing Plumhoff v. Rickard, --- U.S. ---, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014)). "A case directly on point is not required", id., rather, "[t]he central concept is that of 'fair warning': The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting Hope v. Pelzer, 536 U.S. 730, 740, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).

The Fourth Amendment, made applicable to the States by way of the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961), guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993). Time and again, the United States Supreme Court has observed that searches and seizures "'conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well delineated exceptions.'" Thompson v. Louisiana, 469 U.S. 17, 19-20, 83 L. Ed. 2d 246, 105 S. Ct. 409 (1984)(per curiam) (quoting Katz v. United States, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (footnotes omitted)); Mincey v.

*Arizona*, 437 U.S. 385, 390, 57 L. Ed. 2d 290, 98 S. Ct. 2408 (1978); see also United States v. Place, 462 U.S. 696, 701, 77 L. Ed. 2d 110, 103 S. Ct. 2637 (1983).

To the extent that the officers allege the Justice Court Judge extended the warrant, the district court in the criminal case explained that Mississippi does not recognize warrants procured telephonically. See White v. State, 842 So. 2d 565, 570 (Miss. 2003). Therefore, the evidence shows that in effecting a warrantless search of the truck, the officers violated clearly established constitutional precedent.

Defendants claim that the search was made pursuant to the search warrant such that their actions were objectively reasonable despite the violation of a clearly established constitutional right. Both officers testified that they believed the 320A CR 401 property to be part of the same property as 320 CR 401 and thus covered by the warrant. Warren testified that to reach the 320A building, he had to walk down a dirt path about two hundred yards. He indicated that he saw the designation that the building was located at 320A, but thought it was for electric meter purposes only. The officers continually referred to the 320A building as an "outbuilding" or "shop building." Moreover, at least one vehicle surrounding that building was registered in Kermit Rogers' name and at the address listed in the search warrant. Therefore, they assert their actions were objectively reasonable in light of the clearly established law.

A search must be confined to the terms and limitations of the warrant authorizing it. Bivens v. Six Unknown Agents of the FBI, 403 U.S. 388, 394 n.7, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). The warrant cites the place to be searched as "320 CR 401, Shannon, Lee County, Mississippi, together with all approaches and appurtenances thereto. Also, all vehicles and out buildings on the property." Because the truck was found off the property, and as noted above, the warrantless search was impermissible under the Fourth Amendment, the Court must

determine whether the officers were objectively reasonable in assuming the 320A building and surrounding areas were part of the same parcel as 320 CR 401. Whether the official acted with objective reasonableness is an issue of law reserved for the court. Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999).

The Court finds that the officers were objectively reasonable in authorizing the search of the red truck parked outside the 320A building. The search warrant indicated the areas to be searched to include all appurtenances, outbuildings and vehicles surrounding 320 CR 401. Once officers ran the tag on the red truck, which came back that it was registered to the Plaintiff at the 320 CR 401 address, it would not be unreasonable for them to assume the "outbuilding" metered as 320A CR 401 was covered under the warrant. Also, Warren's authorization of the search of the red truck parked outside 320A CR 401 was not unreasonable in light of the assurances given by the Justice Court Judge Pat Carr that searching that property was "fine." The Court cannot find that the officers were plainly incompetent or knowingly violated the law on the basis of the record. Good, 601 F.3d at 400. Therefore, even though the 320A building was over two hundred yards away, not visible from the residence explicitly covered by the search warrant, and equipped with a separate meter, the Court finds that the officers acted in an objectively reasonable manner in authorizing the search of the red truck.

Plaintiff's claims against Paul Howell fail on an additional level. It is well settled that "[o]nly the direct acts or omissions of government officials . . . will give rise to individual liability under Section 1983." Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 534 (5th Cir. 1997) (citing Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 452 (5th Cir. 1994)). Simply put, in order to demonstrate liability against any of the moving defendants, Rogers must provide competent evidence that the individual personally engaged in an activity that led to the alleged

constitutional deprivations. Indeed, the Fifth Circuit has been "unwilling . . . to extend [1983] liability . . . beyond the affiant and the person who actually prepared, or was fully responsible for preparation of, the warrant application." Michalik v. Hermann, 422 F.3d 252, 261 (5th Cir. 2005). "Personal involvement is a prerequisite to individual liability under section 1983." Metro Charities, Inc. v. Moore, 748 F. Supp. 1156, 1165 (S.D. Miss. 1990), and supervisory officials cannot be held liable for the actions of their subordinates on the basis of respondeat superior. Kohler v. Englade, 470 F.3d 1104, 1114 (5th Cir. 2006); Thompkins v. Belt, 828 F.2d 298, 303-304 (5th Cir. 1987).

The record is clear that Paul Howell did not procure the search warrant here, did not authorize the further search of the property at 320A CR 401, did not contact Judge Carr for an extension of the warrant, and had limited participation in the events of June 17, 2009. Therefore, Plaintiff has failed to adduce evidence that Paul Howell engaged in any activity that led to a constitutional violation. Accordingly, all Section 1983 claims against Paul Howell are dismissed.

All Fourth Amendment claims against Samuel Warren and Paul Howell in their individual capacities brought pursuant to Section 1983 are dismissed.

B.  Forfeiture

Defendants earlier moved for partial summary judgment on Plaintiff's seizure and forfeiture claim. See Motion for Partial Summary Judgment [65].  The Court, unsatisfied with the initial briefing, requested that Plaintiff submit additional authority explaining what legally protected interest he had in property auctioned in light of the County Court of Lee County's Default Judgment forfeiting his interest as of August 31, 2009.  Plaintiff responded, and Defendants filed replies.

Plaintiff suggests that because the items seized were "fruit of the poisonous tree," Defendants should not be allowed to take advantage of its own misconduct and forfeit that property. Plaintiff also claims that he was "allegedly served" and was otherwise "unable to contest the forfeiture action" because he was incarcerated at the time the forfeiture action took place. Further, Plaintiff contends that

> [b]ecause the forfeiture, in accordance with Miss. Code § 41-29-101 et seq required a finding that the seized items were the product of illegal drugs, and because Judge Mills held that property was unlawfully searched and seized, the forfeiture, on its face, must be held to be invalid, and indeed moot, because there remains no evidence which may be used to support the forfeiture.

Defendants respond that while they did not institute the civil forfeiture proceedings, Plaintiff failed to contest that action when given the opportunity. As noted in this Court's Show Cause Order, the record reflects that the Plaintiff was personally served. He has not produced evidence that he was not served. Although he was incarcerated at the time, there is no evidence that he was precluded from participating in the forfeiture proceedings. Indeed, this Court sees evidence daily that litigation from within prison walls is possible. See e.g., 28 U.S.C. § 1915, et seq. (setting forth the requirements of the Prison Litigation Reform Act which allow prisoners to prosecute civil actions). The Summons indicated to Rogers that a failure to answer the complaint would result in a judgment by default against him for the property demanded in the complaint. Once Rogers failed to answer, the State and the North Mississippi Narcotics Unit applied for an entry of default noting that the "Petition of Forfeiture is prima facie evidence that the property is subject to forfeiture by authority of Miss. Code Ann. § 41-29-179 as amended." Based on the record, the County Court made the determination that the property was subject to the forfeiture provisions as "having been used, or intended for use, or constituting proceeds in violation of the Mississippi Uniform Controlled Substances Law."

Plaintiff has failed to show that he did not receive any process that was due in that proceeding. Accordingly, Plaintiff's property interest in the seized property was extinguished by County Court Default Judgment on August 31, 2009. See United States v. De Los Santos, 260 F.3d 446, 448 (5th Cir. 2001) (holding that once an order forfeiting property entered, the plaintiff loses his right in the property). That Default Judgment vested the property interest of those forfeited items to the State of Mississippi and the North Mississippi Narcotics Unit. See Nelson v. State, 147 So. 3d 401, ¶¶ 5-6 (Miss. Ct. App. 2014) (petition to return property forfeited by default judgment dismissed for failure to timely raise a Rule 60(b) motion to overturn that judgment in the trial court). Therefore, Plaintiff has no standing to contest the auction of those forfeited items in this Court.

C. Due Process

Rogers claims that the officers and particularly Warren presented false and misleading evidence to the prosecution which violated his procedural and substantive due process rights pursuant to the Fourteenth Amendment. The Supreme Court has held repeatedly that "a conviction obtained through false evidence, known to be such by representatives of the State" violates a defendant's constitutional rights. Canales v. Stephens, 765 F.3d 551, 573 (5th Cir. 2014) (citing Miller v. Pate, 386 U.S. 1, 7, 87 S. Ct. 785, 17 L. Ed. 2d 690 (1967). Such a claim under the Fourteenth Amendment, however, is foreclosed by the Supreme Court's decision in Albright v. Oliver, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994). Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 814 (5th Cir. 2010). In Albright, the Supreme Court held that there was no Fourteenth Amendment "liberty interest" or substantive due process right to be free from criminal prosecution unsupported by probable cause. Id. at 270-71, 114 S. Ct. 807; Castellano v. Fragoza, 352 F.3d 939, 946, 947 (5th Cir. 2003) (en banc). Rather, "[w]here a

particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing these claims.'" <u>Albright</u>, 510 U.S. at 273, 114 S. Ct. 807 (internal citations omitted). Thus, the <u>Albright</u> Court held that the plaintiff's claims based on prosecution without probable cause were best analyzed under the Fourth Amendment, as the "Framers [of the Constitution] considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." <u>Id.</u> at 274, 114 S. Ct. 807.

Here, Plaintiff's Fourteenth Amendment claims are based on alleged pretrial deprivations of his constitutional rights and, under the holding in <u>Albright</u>, such claims should be brought under the Fourth Amendment. <u>See</u> <u>Cuadra</u>, 626 F.3d at 814.  Rogers attempts to support his Fourteenth Amendment due process claims by citing the Supreme Court's holding in <u>Napue v. Illinois</u>, where the Court stated that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . ." 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959). However, Rogers, same as the plaintiff in <u>Cuadra</u>, was not *convicted* of a crime based on false evidence. <u>Cuadra</u>, 626 F.3d at 814 (finding no due process claim where indictment was dismissed by prosecutors once Cuadra produced a document directly implicating the school administrator-defendants which also had access to those documents).  Rather, Rogers complains of alleged deprivations of his pretrial rights resulting from his indictment. Such a claim is not a viable Fourteenth Amendment claim.

D.  <u>Section 1983 – City and County Liability</u>

Plaintiff claims that the City of Tupelo and Lee County's failure to train their officers in extending search warrants and the invalidity of telephonic warrants under Mississippi law caused a deprivation of his constitutional rights.  In particular, Plaintiff asserts two theories of liability:

(1) an unwritten custom of telephonic extensions of search warrants; and (2) inadequate training on extensions of search warrants. To establish liability under 42 U.S.C. Section 1983 on the part of the City and County, Plaintiff must show that any constitutional violation by the officers was done pursuant to a policy from those entities. "Policy" in this context means either an official policy adopted and promulgated by a city policymaker, or a "persistent, widespread practice" of officials or employees which "is so common and well settled as to constitute a custom that fairly represents municipal policy." Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 309 (5th Cir. 2004); Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984). For a "custom" as described above to constitute a policy, a city policymaker must have either actual or constructive knowledge of it, where a policymaker is a lawmaking officer or "an official to whom the lawmakers have delegated policy-making authority." Johnson, 379 F.3d at 309; Webster, 735 F.2d at 841. In order to recover from a governmental entity based on an official policy or custom under Section 1983, Rogers must demonstrate the following: (1) an official policy or custom of which (2) the policy maker can be charged with actual or constructive knowledge and (3) a constitutional violation whose "moving force" is that policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 579 (5th Cir. 2001), cert. denied 534 U.S. 820, 122 S. Ct. 53, 151 L. Ed. 2d 23.

Here, Plaintiff has failed to put forth evidence that the improper use of telephonic search warrants was a "persistent and widespread practice" to constitute a policy or custom of the City or County. Piotrowski, 237 F.3d at 581. Warren testified that there was no training by the Lee County Sheriff's Department on extensions of warrants by telephone. However, he noted that he had "see[n] other agents do it." When pressed, Warren testified that he had seen that practice while employed with the Chickasaw County Sheriff's Department. There was no testimony

regarding other Lee County Sheriff's deputies calling for search extensions; therefore, Plaintiff has failed to establish telephonic search warrants as a custom or policy of either the City of Tupelo or the Lee County Sheriff's Department. Also troubling here is that Plaintiff has produced no evidence that the policy-making officials for Lee County or the City of Tupelo had actual or constructive knowledge of the use of telephonic warrants. McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989) ("Sufficiently numerous prior incidents of police misconduct, for example, may tend to prove a custom and accession to that custom by the municipality's policymakers. Isolated instances, on the other hand, are inadequate to prove knowledge and acquiescence by policymakers."); Pineda v. City of Houston, 291 F.3d 325, 330 n.15 (citing Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987) ("Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these.")). Therefore, Plaintiff's first theory of liability against the City and County fails.

It is clear that "a municipality's policy of failing to train its police officers can give rise to § 1983 liability." Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir. 2000) (citing City of Canton v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). In order to establish the City or County's liability, the plaintiff must show (1) inadequate training procedures; (2) that inadequate training caused the officers to violate plaintiff's constitutional rights; and (3) the deliberate indifferent of municipal policymakers. Burge v. Parish of St. Tammany, 187 F.3d 452, 472 (5th Cir. 1999). In the Fifth Circuit "to hold a municipality liable for failure to train an officer, it must have been obvious that 'the highly predictable consequence of not training' its officers was that they 'would apply force in such a way that the Fourth

Amendment rights of [citizens] were at risk.'" <u>Peterson v. City of Fort Worth</u>, 588 F.3d 838, 849 (5th Cir. 2009). Further, "deliberate indifference" as alleged by a plaintiff generally requires "at least a pattern of similar incidents in which the citizens were injured." <u>Estate of Davis ex rel. McCully v. City of North Richmond Hills</u>, 406 F.3d 375, 383 (5th Cir. 2005). In other words, "[w]hile the specificity required should not be exaggerated, our cases require the prior acts be fairly similar to what ultimately transpired . . . ." <u>Id.</u> To support a claim of deliberate indifference arising out of a single incident such as the incident in this case, a plaintiff must demonstrate that there was a complete and total failure to train, not just a failure to train in one limited area. <u>Id.</u> at 386. As the court noted in <u>Estate of Davis</u>, "a showing of deliberate indifference requires that the Plaintiffs 'show that the failure to train reflects a "deliberate" or "conscious" choice to endanger constitutional rights.'" <u>Id.</u> at 383.

Plaintiff has not presented evidence sufficient to create a genuine dispute of material fact regarding his failure to train claim. The evidence cannot establish that the officers were untrained in the Fourth Amendment's warrant requirement and the necessity of an exception to a warrantless search. <u>See</u> <u>Pineda</u>, 291 F.3d at 333. Even if Plaintiff could prove the first two prongs, he has failed to put forth evidence of deliberate indifference. No other incidents of officers overstepping the Mississippi prohibition against telephone warrants or "extending" warrants have been shown attributable to either the officer or deputy affiliated with Lee County or the City of Tupelo. Plaintiff has failed to show that the failure to train on telephonic warrants or warrant extensions was a deliberate choice to endanger citizens' constitutional rights. Indeed, the Supreme Court has noted:

> Neither will it suffice to prove than an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting

> in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

City of Canton, 489 U.S. at 390, 391, 109 S. Ct. 1197.  Plaintiff has failed to meet the minimum threshold for a failure to train claim against the City and County that is necessary to survive summary judgment. Those claims against those entities are dismissed.

Plaintiff seeks to hold Jim Johnson liable under Mississippi Code Section 19-25-19.  That statute provides, "All sheriffs shall be liable for the acts of their deputies, and for money collected by them."  This statute has been interpreted to apply only to a sheriff's personal liability, not his official capacity liability.  Dennis v. Warren, 779 F.2d 245, 248 (5th Cir. 1985); Poole v. Brunt, 338 So. 2d 991, 995 (Miss. 1976) ("Generally speaking, even though a sheriff is personally liable for an act of his deputy, it does not necessarily follow that his bondsman is also liable.")(citation omitted).  Because Jim Johnson is only sued in his official capacity, Plaintiff's assertion of liability under this statute is dismissed.

To the extent Plaintiff seeks to hold Jim Johnson liable under Section 1983, that claim fails as well.  In order to hold Jim Johnson liable under Section 1983 there must be some connection between his actions and the alleged constitutional violation. Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir. 1986). Official liability will attach under Section 1983 only if "'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Collins v. City of Harker Heights, 503 U.S. 115, 121, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). A sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is

liable under Section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998); Thompson, 245 F.3d at 459. The plaintiff must demonstrate at least a pattern of similar violations. Snyder v. Trepagnier, 142 F.3d 791, 798-99 (5th Cir. 1998), cert. dismissed 526 U.S. 1083, 119 S. Ct. 1493, 143 L. Ed. 2d 575 (1999). A single incident is usually insufficient to demonstrate deliberate indifference such that "[t]o succeed on his claim of failure to train or supervise" the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to "demonstrate a pattern of violations." Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003), cert. denied 540 U.S. 826, 124 S. Ct. 181, 157 L. Ed. 2d 48 (2003). Rogers must present evidence for a reasonable fact finder to conclude that his injury, if any, resulted from an official policy or custom of the Sheriff's Office to survive summary judgment on his claim against Jim Johnson. See Collins, 503 U.S. at 120-1, 112 S. Ct. 1061. In addition, Rogers has failed to show that there was a direct causal link between a policy and the alleged violation. See James v. Harris Cnty., 577 F.3d 612, 617 (5th Cir. 2009), cert. denied 558 U.S. 1114, 130 S. Ct. 1078, 175 L. Ed. 2d 888 (2010).

The uncontroverted summary judgment evidence in this case is that Jim Johnson was not personally involved in the search or seizure on June 17, 2009, nor is there a causal connection between his acts and the violations of Rogers' federal rights. See Dennis, 779 F.2d at 248; Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983). Accordingly, Jim Johnson is dismissed as a party as there are no remaining viable claims against him.

E.  State Law Claims

Plaintiff also asserts that the officers are liable under state law for malicious prosecution, trespass, defamation, outrage, and intentional infliction of emotional distress. Plaintiff's state law claims are premised on the assertion that the officers maliciously misrepresented in Warren's report that the red truck was located behind the residence at 320 CR 401.  Howell did not secure the search warrant, make the arrest, search Plaintiff or his vehicle, initiate the charge against him, or even file a report on which Rogers' prosecution was seemingly based.  Plaintiff therefore has not raised a genuine issue of material fact that Howell is liable for any harm allegedly caused. The state law claims against Howell are appropriately dismissed.

The Mississippi Tort Claims Act (MTCA) provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit.  MISS. CODE ANN. § 11-46-7(1); Moore v. Carroll County, Miss., 960 F. Supp. 1084, 1088 (N.D. Miss. 1997) ("The remedy provided pursuant to the MTCA is exclusive of any other state law remedy sought against a governmental entity or its employee.").  Therefore, any tort claim filed against a governmental entity or its employee shall be brought only under the MTCA. Id. The MTCA waives sovereign immunity as a whole claims for money damages arising out of torts of governmental entities and their employees. However, that statute further provides that "a governmental entity and its employees acting within the course and scope of their employment duties shall not be liable for any claim . . ." "[a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities related to police or fire protection unless the employee acted in reckless disregard of the safety and well being of any persons not engaged in criminal activity at the time of injury." MISS. CODE ANN. § 11-46-9(1).  The police exemption is designed to protect law enforcement personnel from

lawsuits arising out of the performance of their duties with respect to the victim. <u>Miss. Dep't of Pub. Safety v. Durn</u>, 861 So. 2d 990, 997 (Miss. 2003). The Mississippi Court of Appeals has noted that an "employee's immunity arises from acting on behalf of the governmental entity[, and] unless the employee is acting within the course and scope of employment, he is not entitled to the limited immunity that falls on the sovereign." <u>Pearl River Valley Water Supply Dist. v. Bridges</u>, 878 So. 2d 1013, 1018 (Miss. Ct. App. 2004) (citing MISS. CODE ANN. § 11-46-5(2)).

To the extent that the Plaintiff is attempting to hold Warren liable in his individual capacity under state law for the actions taken within the course and scope of his employment, those claims must fail. Section 11-46-7(2) of the MTCA allows an individual to be joined in a representative capacity; however, an individual, in the scope and course of his employment, can have no personal liability. MISS. CODE ANN. § 11-46-7(2).

The MTCA notes that "an employee shall not be considered as acting within the course and scope of his employment," and therefore, not immune from a monetary damages claim, where that employee's conduct "constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." MISS. CODE ANN. § 11-46-5(2). Accordingly, to the extent that Plaintiff claims Warren maliciously prosecuted him, defamed him and intentionally inflicted emotional harm on him, those actions would not be covered within the course and scope of his employment, and thus, Warren would not be entitled to immunity under the MTCA.[2]

---

[2] Claims of malicious prosecution, intentional infliction of emotional distress and defamation are not considered to be undertaken within the course and scope of an officer's employment and are therefore not subject to any immunity provisions of the MTCA. MISS. CODE ANN. §§ 11-46-5(1), 11-46-5(2); <u>Tuma v. Jackson Mun. Airport Auth.</u>, No. 3:09cv517-DPJ-FKB, 2012 U.S. Dist. Lexis 49964, *18 n.7 (S.D. Miss. Apr. 10, 2012) (rejecting defendant's argument that the malicious prosecution claim was barred by the police protection exemption as the MTCA excludes such conduct from the course and scope of employment); <u>McBroom v. Payne</u>, No. 1:06cv1222-LG-JMR, 2010 U.S. Dist. LEXIS 107124, 2010 WL 3942010, at *9 (S.D. Miss. Oct. 6, 2010) (concluding that claims of battery, assault, and intentional

The Court looks to whether a genuine issue of material fact exists as to those claims of conduct taken outside the individual officers' course and scope of employment. "In Mississippi, a complaint alleging defamation must set forth the statements, paraphrased or verbatim, that constituted the defamation." Ducksworth v. Rook, 2015 U.S. Dist. Lexis 20563, 12 (S.D. Miss. Feb. 20, 2015) (citing Cooper v. Paragon Sys., Inc., 2008 U.S. Dist. LEXIS 67761, at *8 (S.D. Miss. Sept. 5, 2008) and Roop v. Melton, 2014 U.S. Dist. LEXIS 79735, at *13-*14 (N.D. Miss. June 9, 2014)). Plaintiff did not plead any alleged defamatory statements. Defendants cite an excerpt of Rogers' deposition in which he states that the basis of his defamation claim was that people look at him differently "as someone who possessed drugs." The Plaintiff has not put forth sufficient evidence for this Court to find a genuine dispute of material fact regarding this claim.

"The elements of malicious prosecution are: (1) the institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceeding in the plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of the injury or damage as a result of the prosecution." Perkins v. Wal-Mart Stores, Inc., 46 So. 3d 839, 844 (Miss. Ct. App. 2010) (internal quotations omitted). Plaintiff claims that Warren's "misrepresentation" in his report that the truck was parked behind the residence at 320 CR 401 caused him to be federally indicted and spend 452 days in federal custody. What Plaintiff has not put forth evidence of, however, is that Warren had any malice in making that report. No reason for such a statement has been extended by the Plaintiff to indicate Warren's malicious intent. Accordingly, that state law claim fails.

---

infliction of emotional distress cannot be considered within a police officer's "course and scope of employment" under the MTCA).

Plaintiff also alleges a state law trespass claim as well. The Mississippi Supreme Court has held that intentional torts that do not require proof of fraud, malice, libel, slander, or defamation are subject to the MTCA. <u>Zumwalt v. Jones County Bd. of Supervisors</u>, 19 So. 3d 672 (Miss. 2009) (holding that "conversion is an intentional tort arguably subject to the MTCA . . .."); <u>Cmty. Bank of Ellisville, Miss. v. Courtney</u>, 884 So. 2d 767, 783 (Miss. 2004) (noting that conversion is an intentional tort that does not require proof of fraud, malice, libel, slander, or defamation); <u>See</u> <u>Town Creek Master Water Mgmt. Dist. of Lee v. Webb</u>, 93 So. 3d 20, ¶11 (Miss. 2012) (equating conversion and trespass both as common law "intentional interference with property"). Indeed, the Mississippi Supreme Court has held that torts which require no proof of malice are subject to the MTCA. <u>Zumwalt</u>, 19 So. 3d at 688-89. "[T]he intent necessary for a trespass for one 'to be at the place on the land where the trespass allegedly occurred.'" <u>Alexander v. Brown</u>, 793 So. 2d 601, 605 (Miss. 2001) (quoting W. Page Keeton, <u>Prosser & Keeton on the Law of Torts</u> § 13, at 73 (5th Ed. 1984)). Accordingly, the Court finds that trespass, although an intentional tort, is subject to the MTCA as an action committed within the course and scope of a governmental entity employee's duties as it does not require proof of fraud, malice, libel, slander, or defamation. The MTCA exempts from liability claims arising out of the execution of duties relating to police or fire protection unless the employee acted in reckless disregard. MISS. CODE ANN. § 11-46-9(1)(c).

The Mississippi Supreme Court has held that "[r]eckless disregard is 'a higher standard than gross negligence, and it embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.'" <u>City of Jackson v. Shavers</u>, 97 So. 3d 686, 688 (Miss. 2012). That court went on to explain that reckless disregard "typically involves a conscious indifference to consequences, and almost a willingness that harm should follow.

Reckless disregard is found where there is a deliberate disregard of an unreasonable risk and a high probability of harm." Id. The same court has stated, "reckless disregard under Section 11-46-9(1)(c) embraces willful and wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." Turner v. City of Ruleville, 735 So.2d 226, 230 (Miss. 1999). "Police officers and fire fighters are more likely to be exposed to dangerous situations and to liability, and therefore, public policy requires that they not be liable for mere negligence." Maldonado v. Kelly, 768 So.2d 906, 909 (Miss. 2000).

According to the Mississippi Supreme Court, plaintiff must show that Warren appreciated an unreasonable risk to Plaintiff's safety, understood that there was a high probability of harm to him, and when Warren "trespassed" on Plaintiff's truck, he "deliberately disregard[ed] that risk in a willful or wanton manner, exhibiting a conscious indifference to the consequences and almost a willingness that harm should follow their actions." Id. at 689.

Initially, the Court notes that there is no evidence that Warren ever "trespassed" on Rogers' truck. Warren testified that he authorized the search, but did not personally undertake the search. Additionally, the Court finds that Plaintiff has not put forth evidence of "reckless disregard." Warren called the Justice Court Judge who issued the search warrant on his cell phone while the judge was on his lunch break before the search of Rogers' truck commenced. It is undisputed that Warren relied on assurances from that judge that the search of Rogers' vehicle was not outside the scope of the warrant. Warren's insistence on confirming with the judge that the search was legal convinces this Court that he did not act with reckless disregard. Therefore, based on the record before the Court, no genuine issue of material fact exists as to whether Warren trespassed on Rogers' property and Warren is entitled to the immunity offered under the MTCA for his actions.

*Conclusion*

Defendants' motions for summary judgment are GRANTED.  The officers are entitled to qualified immunity and the protections of the MTCA police function exemption.  Plaintiff has failed to show a genuine dispute of material fact as to the remaining claims.

SO ORDERED, this the 29th day of May, 2015.

**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**